Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

FEE PAID
S/I

FILED

CLERK, U.S. DISTRICT COURT

08/06/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____mba_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br><br>             Plaintiff,<br><br>        v.<br><br>3-D TREE SERVICES, INC,<br>ROBERT DURAN, and<br>ROBERT CAMARGO,<br><br><br>             Defendants. | Case No. 8:26-cv-02148-JVS (ADSx)<br><br>**COMPLAINT FOR:**<br><br>1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 |

Plaintiff, Jorge Alejandro Rojas, files this Complaint under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against Defendants 3-D TREE SERVICES, INC ("3-D"), Robert Duran ("Duran"), and Robert Camargo ("Camargo"), and alleges based on personal knowledge and information and belief:

### INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30

-1-

years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227.

3. This case involves a campaign by Defendants which placed illegal automated texts to Plaintiff's telephone number, which is on the Do Not Call Registry, for tree trimming services, which were not consented to.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct operations in the state of California. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois. Plaintiff previously resided within this District.

8. Defendant 3-D TREE SERVICES, INC ("3-D") is a California entity, with a principal address of 2823 E ROSE AVE ORANGE, CA 92867, with a registered agent of ROBERT DURAN located at 2823 E ROSE AVE ORANGE, CA 92867.

9. Defendant Robert Duran ("Duran") is the CEO, Secretary, CFO, Director of 3-D with an address of 2823 E ROSE AVE ORANGE, CA 92867.

10. Defendant Robert Camargo ("Camargo") is the VP, Director of 3-D with an address of 2823 E ROSE AVE ORANGE, CA 92867.

11. Defendants are each a person as defined by 47 U.S.C. § 153(39).

12. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

13. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

14. The TCPA makes it unlawful to make calls using an automatic telephone dialing system ("ATDS") without the call recipient's prior express consent.

15. "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)". *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

17. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

18. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

19. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

20. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Id. at § 12; see also Martin v. Leading Edge Recovery Solutions, LLC, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

21. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id*. at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744.

22. Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such

-4-

communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

23. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2).

24. A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

25. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R § 64.1200(c)(2).

26. Under the TCPA, an individual may be personally liable for the acts alleged in the Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

"[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (*emphasis* added)

27. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the

TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

28. Individual Defendants directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

29. Employees can be held liable in TCPA actions for unlawful conduct.

30. The individual defendant in this case personally participated in the actions complained of by: (a) personally selecting the phone numbers that would be called; (b) approving the scripting that would be used on the calls; (c) selecting and managing the dialing equipment or supplier of the same used to make the calls; and (d) personally paying for the calls.

## FACTUAL ALLEGATIONS

31. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582.

32. The phone number is not associated with a business and is used by Plaintiff solely.

33. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.

34. Plaintiff registered his phone number on the Do Not Call list to obtain solitude from telemarketing calls. Despite Plaintiff's efforts to avoid receiving such calls, Defendants continued to call Plaintiff.

35. Plaintiff is the account holder and customary user of his phone number.

36. Upon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

37. Upon information and belief, the automated text messaging system used by Defendants to send the text messages also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

38. Moreover, the message sent to Plaintiff was drafted in advance and sent out automatically based on pre-programmed parameters.

39. The texting platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers and send our text messages en masse. Thus, a random or sequential number generator is used both to store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

40. In Merriam Webster's Dictionary "voice" is defined as "an instrument or medium of expression." It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

41. The messages sent to Plaintiff by Defendants using their SMS blasting platform employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff. The platform is a man-made humanly contrived program which allows companies to blast out such messages via non-spontaneous methods, i.e. automated methods similar to that of an assembly line in a factory. Such SMS blasting devices are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, en masse, pursuant to preprogrammed parameters.

42. Merriam Webster's Dictionary, "prerecorded" is defined as "recorded in advance." "Recorded" is defined as "to set down in writing." The text message sent to Plaintiff's cellular telephone via the SMS blasting platform was set down in writing in advance by Defendant, whose employees wrote out the standard automated

messages that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant. Thus, Defendant employed a text message as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

43. Plaintiff was annoyed and felt harassed by the receipt of the text messages from Defendants.

44. Defendants may have selected numbers to be texted sequentially (or possibly randomly) and then used publicly available databases to identify the owner of the telephone number dialed when such randomly or sequentially generated text was sent.

45. Even if Defendants "uploaded" a list of telephone numbers to a database, that database or system can still be using a random or sequential number generator to decide the order in which to send the text messages, given that it can't send them *all* at once.

46. For example, the text messaging system may have identified a dialing order to each telephone number for each campaign when sending out the text messages, using a random or sequential number generator.

47. The texts were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

48. Plaintiff is ignorant of the exact process by which the Defendants used the system they connected to the Sinch telephone service. However, no facts exist to show that Defendants called the Plaintiff in a targeted manner. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the

-8-

pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

49. If a text is a call, then the communication conveyed on that "call" must be treated the same as the communication made on an auditory call.

50. A live individual did not send out each individual text message to Plaintiff.

51. Agentless SMS messages sent by computers are clearly artificial.

52. So a text sent in such a manner is an artificial voice.

53. **Call 1.** On or about June 18, 2026, at 10:18 AM Pacific time, Plaintiff received a text message from Defendants, or an agent acting on their behalf, from telephone number 424-287-3775.

54. The text in Call 1 was "Hey Delfin, this is Cindy from CA Tree Removal Group. We are in Torrance offering free quote for tree services. Would you be interested?".

55. **Call 2.** On or about July 25, 2026, at 8:11 AM Pacific time, Plaintiff received a text message from Defendants, or an agent acting on their behalf, from telephone number 424-855-9660.

56. The text in Call 2 was "Hi Delfin, it's Milly. We're offering free tree service estimates in Torrance. Interested in getting one?"

57. **Call 3.** On or about August 6, 2026, at 8:41 AM Pacific time, Plaintiff received a text message from Defendants, or an agent acting on their behalf, from telephone number 321-265-8732.

58. The text in Call 3 was "Hey Delfin , its Amy from a local Tree Service  company. We are offering huge tree trimming/removal discounts in Torrance. Want a free estimate?"

59. Further evidence of the use of an ATDS includes rotating telephone numbers.

60. The text messages received were all around the same time period – within the same two month span, and all using generic names of individuals concerning the same type of services – tree removal.

61. Plaintiff alleges all the text messages were made for and on behalf of the same entity.

62. Plaintiff texted in response to Call 3, "Sure how does that work," at 9:12 AM on August 6, 2026.

63. Plaintiff thereafter received a text message, from 714-944-4896, on August 6, 2026, at 10:40 AM Pacific time, which stated "Hey, it's Robert here with 3-D Tree Service. I was reaching out about the trees work you need done. Would I be able to stop by for an estimate today ?"

64. Robert thereafter provided a website of https://3dtreeservicesoc.com/ when asked for a website for the company by Plaintiff.

65. The website https://3dtreeservicesoc.com/ has a telephone number listed which matches the texts made to Plaintiff subsequent to Call 3.

66. To the extent that Defendants are utilizing a third-party call center to make calls on its behalf, Defendants named here are vicariously liable for their conduct, as that conduct was made for their own benefit.

67. The calls were made for the purposes of soliciting tree trimming services customers and were made using an ATDS and in violation of the do not call registry.

68. Plaintiff has not entered into an established business relationship with Defendants.

69. Defendants lack the necessary controls to make sure that solicitations are not sent to individuals who do not desire them.

70. Plaintiff has never consented to calls from Defendants which are challenged in this complaint.

71. Courts have relied in part on the "the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" *Universal Elections*, 787 F. Supp. 2d at 416 (internal citations omitted); *see also Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898.

72. The individual Defendants in this action engaged in the operation of the telemarketing scheme.

73. The conduct alleged in this action was made willful and knowingly.

74. The TCPA requires telemarketers to provide training to their employees, contractors, etc., and Defendants have failed to properly train the same.

75. Defendants did not have any consent to call Plaintiff.

76. Defendants are not an organization exempt from the TCPA.

77. In total, Defendants and/or their affiliates placed at least THREE (3) texts to Plaintiff.

78. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

79. Defendants have a pattern and practice of failing to comply with the TCPA.

80. The foregoing acts and omissions were in violation of the TCPA.

81. Defendants are engaging in violations of the TCPA to get business.

82. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

83. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

84. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

85. Plaintiff is also entitled to an award of costs.

86. Defendants' calls were not made for "emergency purposes."

87. Defendants' calls to Plaintiff were made without any prior express written consent.

88. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

89. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

90. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

91. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

### COUNT 1. Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

92. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

93. Defendant or one of its affiliates or vendors texted Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least THREE (3) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

94. Plaintiff was statutorily damaged at least THREE (3) occasions under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone call described above, in the amount of $500.00 for each.

95. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $4,500.00 plus costs and any other remedy deemed appropriate.

## COUNT 2.

### VIOLATIONS CONCERNING TCPA IMPLEMENTING REGULATIONS, INCLUDING DO NOT CALL REGISTRY, 47 C.F.R. § 64.1200

96. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

97. By placing at least 3 telemarketing calls to Plaintiff's residential telephone number, Defendants have violated the TCPA and its implementing regulations, including but not limited to 47 C.F.R. § 64.1200.

98. The first violation, for each call, is calling a number on the national Do-Not-Call registry.

99. Plaintiff was statutorily damaged at least 3 times under 47 U.S.C. § 227(c)(5) in the amount of $500.00 for each such violation.

100. Plaintiff is also entitled to and seeks injunctive relief prohibiting Defendants from violating the TCPA's implementing regulations, 47 C.F.R. § 64.1200, in the future.

101. Plaintiff was further statutorily damaged because Defendants' willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(c)(5) for these willful or knowing violations to $1,500.00 per call.

102. Plaintiff's telephone number was registered on the Do Not Call Registry more than thirty (30) days before Defendants' calls were made.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants, jointly and severally, in an amount of $4,500.00 plus costs and any other remedy deemed appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and severally, in an amount to be more fully determined at trial, but at least $9,000.00 as permitted by statute, as follows:

-13-

A. All actual damages Plaintiff suffered,

B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5),

D. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(c) and the TCPA's implementing regulations;

E. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5);

F. All reasonable witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,

G. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,

H. Leave to amend this Complaint to conform to the evidence presented at trial,

I. Any other relief this Court deems proper.

Respectfully submitted,

Dated: August 6, 2026.

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

-14-